NANCY CHALMERS, Plaintiff-Appellant, *v.* THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 79-839

Opinion filed December 17, 1980.

Michael D. Distel, of LaPort-Sorrentino Associates, Ltd., of Chicago, for appellant.

William R. Quinlan, Corporation Counsel, of Chicago (Robert R. Retke and Jetta N. Jones, Assistant Corporation Counsel, of counsel), for appellees.

Miss PRESIDING JUSTICE McGILLICUDDY delivered the opinion of the court:

This is an appeal from the denial of the plaintiff's post-trial motion in which she asked the court to enter a judgment conforming the verdict to the intention of the jury.

The plaintiff, Nancy Chalmers, was involved in an automobile accident with Edward Meany on May 22, 1973. Meany, a police officer for the City of Chicago, was driving a squad car at the time of the collision.

The plaintiff brought this action for damages against Meany and the City of Chicago, alleging that Meany had committed certain acts of willful and wanton negligence and acts of ordinary negligence.

In his closing argument the plaintiff's attorney reminded the jury that the plaintiff had incurred medical expenses in the amount of $1705.99. He also requested that the jury award the plaintiff $13,000 in damages for the nature, extent and duration of her injuries, for the resulting disability and

for pain and suffering. The attorney made no reference to punitive damages.

A special interrogatory was tendered to the jury which stated: "Was the defendant Officer Meany guilty of wilful and wanton conduct which proximately caused the plaintiff's injuries?" The trial court instructed the jury that if it found that Meany was guilty of such conduct, it could award damages in "an amount which will serve to punish the defendant and to deter others from the commission of like offenses."

The jury returned a verdict in favor of the plaintiff. It assessed damages as follows:

"We assess the damages in the sum of $1705.99."

"We assess punitive damages in the sum of $13,000."

The jury's answer to the interrogatory concerning Meany's alleged willful and wanton conduct was "No."

The trial court awarded damages in favor of the plaintiff in the amount of $1705.99. Because the jury expressly found that Meany was not guilty of willful and wanton conduct, the court did not award punitive damages.

The plaintiff filed a post-trial motion requesting that the trial court enter an order conforming the verdict to the jury's intention to award $14,705.99 in compensatory damages. In the alternative, the plaintiff asked the court to reassemble the jurors and poll them regarding their intentions, or to enter an order for an additur because of the inadequacy of the verdict, or to grant a new trial on the issue of damages only. Attached to the motion were the affidavits of 11 of the jurors which stated:

> "[I]t was the consensus of all members of the twelve person jury that the Plaintiff should receive the entire amount of $14,705.99 for medical expenses, nature, extent and duration of the injury, disability resulting from the injury and the pain and suffering experienced, and we were confused by the form of verdicts furnished to us and were unsure of how to return verdicts in accordance with our agreement; that we were uncertain if we could request communication with the presiding judge to obtain clarification of the instructions on how to return a verdict allowing recovery for the Plaintiff for medical expenses and compensatory damages; that since we did not request clarification we placed the $13,000 for compensatory damages in the blank reserved for punitive damages, believing it to mean damages for nature, extent and duration of the jury [sic], disability resulting from the injury and pain and suffering experienced by the Plaintiff."

The trial court denied all relief requested in the motion.

On appeal the plaintiff argues that the trial court erred by refusing to consider the 11 affidavits which set forth the actual intention of the jury. ■■ A long established rule in Illinois provides that affidavits of jurors are inadmissible to impeach the jury's verdict. (*Heldmaier v. Rehor* (1900), 188 Ill. 458, 59 N.E. 9; *Takecare v. Loeser* (1969), 113 Ill. App. 2d 149, 251 N.E.2d 724.) The purpose of this rule is to prevent tampering with the jury after its discharge and to suppress the dissatisfied juror who attempts to destroy a verdict to which he assented. *Heldmaier*.

The plaintiff argues that the affidavits in the instant case do not impeach the verdict because they are merely clarifying the actual verdict agreed upon by the jurors. The plaintiff cites several cases which permit the use of affidavits for this purpose.

In *McGlone v. Hauger* (1914), 56 Ind. App. 243, 104 N.E. 116, the jury rendered a verdict in the amount of "fifteen (1500 00) dollars." Subsequently, the plaintiff obtained the affidavits of nine jurors which stated that it was the intention of the jury to return a verdict for $1500. After considering the affidavits, the trial court corrected the verdict. On appeal the court cited the general rule that affidavits of jurors cannot be received to impeach their verdict. However, the court noted that this rule does not affect the power of a court to accept jurors' evidence in order to correct a mistake resulting in the entry of a verdict contrary to the jury's finding. The court quoted with approval *Capen v. Inhabitants of Stoughton* (1860), 82 Mass. (16 Gray) 364, 367-68, which held:

> "No considerations of public policy require that the uncontradicted testimony of jurors to establish an error of this nature should be excluded. Its admission does not in any degree infringe on the sanctity with which the law surrounds the deliberations of jurors, or expose their verdicts to be set aside through improper influences, or upon grounds which might prove dangerous to the purity and steadiness of the administration of public justice. On the contrary, it is a case of manifest mistake, of a merely formal and clerical character, which the court ought to interfere to correct, in order to prevent the rights of the parties from being sacrificed by a blind adherence to a rule of evidence, in itself highly salutary and reasonable, but which upon principle has no application to the present case."

In *Glennon v. Fisher* (1932), 51 Idaho 732, 10 P.2d 294, the Supreme Court of Idaho approved the use of affidavits to correct a verdict. The court stated:

> "Appellants earnestly submit that a juror may not be permitted to impeach his verdict. That is not what happened here. Before any attempt to impeach, there must be a verdict rendered. There

must be a positive declaration which the jury seeks to qualify or revoke. Here, the jurors returned a form of verdict, honestly believing it expressed their decision, whereas it signally failed to do so. It was the court's duty, when so apprised, to cause such correction as would enable the filed paper to reflect the true verdict." (51 Idaho 732, 736, 10 P.2d 294, 295.)

See also *Rose v. Thau* (1974), 45 App. Div. 2d 182, 357 N.Y.S.2d 201; *Moulton v. Staats* (1933), 83 Utah 197, 27 P.2d 455.

Not all jurisdictions adhere to this reasoning. The Supreme Court of Rhode Island in *Roberts v. Kettelle* (1976), 116 R.I. 283, 356 A.2d 207, explained that the general rule concerning affidavits is grounded in the premise that admission of such affidavits undermines the stability of jury verdicts and corrodes the purity of trial by jury. The court held that:

"We perceive no reason why this rule should not apply with equal force to a situation where the alleged error is that the jury erroneously reported its true verdict. The public interest requires that litigation be terminated and to that end the jury verdict should possess a conclusiveness that will preserve the stability of the jury trial as an instrument for doing substantial justice. [Citation.] To allow jurors' affidavits even for the limited purpose sought here would tend to pollute our system of independent deliberations by the jury. Every party who was dissatisfied with a jury verdict would feel able at least to attempt to effect a revision thereof. Such a situation leaves jurors open to harassment and intimidation long after they have been discharged from their official duties and thus after they are outside the watchful eye of the court." (116 R.I. 283, 300, 356 A.2d 207, 217.)

See also *Biebelle v. Norero* (1973), 85 N.M. 182, 510 P.2d 506; *Downum v. Muskogee Stockyards & Livestock Auction, Inc.* (Okla. 1977), 565 P.2d 368; *Ford Motor Credit Co. v. Amodt* (1966), 29 Wis. 2d 441, 139 N.W.2d 6.

After careful consideration we find that a prohibition against the use of affidavits to assert an allegedly erroneous recordation is in the public's interest. We foresee serious dangers in permitting *ex parte* communications between the unsuccessful litigants and the jurors in order to persuade them that the recorded verdict was not the verdict agreed upon. The possibility of the harassment of jurors in attempts at persuasion or bribery could result in serious damage to our trial by jury system.

Admittedly, the rule set forth in this opinion could result in a hardship in some instances. However, this possibility can be prevented by a request that the court poll the members of the jury prior to its discharge.

We realize that our decision is in conflict with *Hunter v. Smallwood*

(1975), 28 Ill. App. 3d 386, 328 N.E.2d 344, a case decided by the Third District. In *Hunter* the jury had twice asked the trial judge for clarification of the forms of verdict in a consolidated action. Because the judge deemed it inappropriate to speak to the jury outside the presence of counsel, he refused the jury's request. The jury returned a verdict denying recovery in one action and assessing damages in the second action. In a post-trial motion, one defendant attached affidavits from four of the six jurors which stated that the jury had decided against recovery in both cases and was confused by the verdict forms. Post-trial relief was denied. On appeal the court held that the trial court had a duty to ascertain the confusion which the jury was experiencing as a result of the verdict forms. It further stated that the trial court can consider affidavits of jurors which indicate that the verdict rendered and recorded was not the one agreed upon. Although we realize that the *Hunter* court desired to provide relief to a prejudiced party, we must respectfully disagree with its holding.

For the foregoing reasons the judgment of the Circuit Court of Cook County is hereby affirmed.

Affirmed.

McNAMARA and RIZZI, JJ., concur.