SHORES, Justice.
This is an appeal by Alabama Hospital Association Trust (“AHAT”) from a summary judgment in favor of Mutual Assurance Society of Alabama (“MASA”). The facts out of which the controversy between these two litigants arose are set out in the judgment of the trial court, and they are not disputed. The trial court determined that MASA was entitled to judgment as a matter of law. We agree, and we adopt the opinion of the learned trial judge as part of this Court’s opinion:
“FINAL JUDGMENT
“This case has been submitted for decision by this Court on the motion for a partial summary judgment filed by Alabama Hospital Association Trust, a self insurance plan (hereinafter “AHAT”), with respect to its claim by way of subrogation or indemnity. This case has also been submitted for decision on the motion for summary judgment filed by the defendant, Mutual Assurance Society of Alabama, a mutual insurance company (hereinafter “MASA”) with respect to all of the claims asserted by AHAT in this case.
“This case involves a dispute between AHAT and MASA with respect to MASA’s obligation to reimburse AHAT in the amount which AHAT paid in satisfaction of a judgment rendered against Lloyd Noland Foundation, Inc. (“Lloyd Noland”), in the *1210 case styled Albert May v. Lloyd Noland Foundation, Inc., et al., Civil Action No. CV 79-0583. In that case, the complaint filed by Albert May made claim for damages against Lloyd Noland and Dr. Janette Habachy and Dr. Han Young Park, alleging that Lloyd Noland undertook to treat and care for Albert May’s minor child, Lepo Hatarar May, during the course of an operation; that Dr. Habachy and Dr. Park were practicing anesthesiologists who also undertook to treat and care for Lepo May during the course of an operation; and that the negligence of all three defendants concurred and combined to cause Lepo May’s death on August 12, 1978.
“Lloyd Noland had insurance coverage with respect to May’s claim as a member of the AHAT self insurance plan with coverage limited as follows:
“ ‘Regardless of the number of: (a) insureds under this exhibit; (b) persons or organizations who sustain loss; (c) claims made or suits brought on account of loss; the trust’s liability for any one member hospital is limited to:
“ ‘$1,000,000 per occurrence
“ ‘$3,000,000 report year aggregate
“ ‘for loss resulting from any one claim or suit or all claims or suits first made during the fiscal period because of damages insured under any of the above Agreements.’
“The insuring agreement with respect to Lloyd Noland provided in pertinent part as follows:
“ ‘The trust will pay on behalf of each member all sums which the member shall become legally obligated to pay as damages because of any claim or claims made against the member during the fiscal period because of:
“‘AGREEMENT A — HOSPITAL PROFESSIONAL LIABILITY ARISING OUT OF THE PERFORMANCE OF PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED DURING THE FISCAL PERIOD, BY THE MEMBER OR BY ANY PERSON FOR WHOSE ACTS OR OMISSIONS THE MEMBER IS LEGALLY LIABLE, AND
“ ‘AGREEMENT B — PERSONAL INJURY LIABILITY ARISING OUT OF AN OCCURRENCE DURING THE FISCAL PERIOD....’
“The self insurance trust also defines persons covered in part as follows:
“ ‘II. PERSONS COVERED
“‘Each of the following is a member under this Trust to the extent set forth below:
“ ‘A. The member, as named in the Trust Participation Agreement;
“ ‘B. Any chief executive officer, hospital administrator, hospital supervisor or member of the governing body or stockholder of the member, while acting within the scope of his duties as such;
[[Image here]]
“ ‘E. Under Agreement A, any person included as an employee, student or authorized volunteer worker (except interns, externs, residents, dental, osteopathic or medical doctors) for which coverage is afforded under this Trust, while such person is acting within the scope of his duties as an employee, student, or authorized volunteer worker; provided that the coverage afforded to any such person under this paragraph shall not apply to injury to any employee, student, or authorized volunteer worker of the member arising out of or in the course of his employment by the member, except injury arising out of the rendering of or failure to render professional services to such employee, student or authorized volunteer worker.
“ ‘F. Under Agreements B and C, any employee, student or authorized volunteer worker (except interns, externs, residents, dental, osteopathic or medical doctors) of the member, while acting within the scope of his duties as such, but the coverage afforded to such employee, student or authorized volunteer worker does not apply:
“ ‘1. To personal injury to (a) another employee, student or authorized volunteer worker of the member arising out of or in the course of his employment, or (b) the member or, if the member is a *1211 partnership or joint-venture, any partner or member thereof....’
“The above quoted provisions indicate that liability coverage was provided to Lloyd Noland itself for all possible liability, whether the same resulted from the conduct of physicians or from the conduct of persons other than physicians. The AHAT insuring agreement also provided coverage for individuals rendering professional services for Lloyd Noland, excluding, however, individuals who were interns, externs, residents, dental, osteopathic or medical doctors.
“The two doctors, Habachy and Park, had liability insurance coverage with respect to May’s claim under an insurance policy issued by MASA. This insurance policy had a limit of liability of $1,000,000 for each person and $1,000,000 annual aggregate amount.
“By special endorsement, MASA also provided liability insurance coverage to Lloyd Noland and the Medical Clinic Board of the City of Fairfield for liability resulting to either of those two entities arising out of acts or omissions of Habachy or Park.
“Pursuant to its obligation to Lloyd No-land under the self insurance trust agreement, AHAT employed Robert Parsons as attorney to represent Lloyd Noland and defend it against May’s claim.
“MASA employed W. Stancil Starnes as the attorney to represent and defend Ha-bachy against May’s claim and also employed Charles A. Stakely, Jr., as the attorney to represent and defend Park against May’s claim.
“Following the commencement of the trial, the case was then submitted to the jury on May’s claim against Lloyd Noland based at least in part, if not wholly, on the negligence of Habachy and Park. No request was made by either party for any special findings of fact by the jury. The jury returned a general verdict in favor of May against Lloyd Noland in the amount of $4,000,000, which was then reduced as the result of a remittitur ordered by the trial court to $2,000,000.
“Thereafter, AHAT paid the sum of $1,000,000 in partial payment of the judgment rendered against Lloyd Noland, and MASA thereafter paid the sum of $725,000 plus a certain amount of interest in full satisfaction of the entire judgment.
“In the present case now before this Court, AHAT makes claim as a subrogee of Lloyd Noland for the recovery from MASA of the $1,000,000 paid by AHAT in partial satisfaction of the judgment. As the basis for its claim, AHAT says that May’s claim against Lloyd Noland and the subsequent verdict and judgment rendered against Lloyd Noland were based only and could have been based only on the negligence of the two physicians, Habachy and Park, employed by Lloyd Noland.
“AHAT says that because Lloyd No-land’s liability resulted from the acts or omissions of its physician employees, the MASA insurance coverage is primary and the AHAT insurance contract is secondary. In addition to the claim asserted by AHAT by subrogation, AHAT also says that MASA was negligent in failing to settle May’s claim within the limits of its primary coverage and, finally, that MASA acted in bad faith in refusing to settle the claim of May within the policy limits and in refusing to pay the remitted judgment with respect to which it was the primary obligor.
“In support of its contention that the jury verdict was based solely and entirely on the negligence of Habachy and Park, AHAT has submitted the affidavit of Jerry Argo, the person who was elected as foreperson of the jury which rendered the verdict. .This affidavit executed by Argo on December 8, 1986, long after the jury verdict in 1983, states as follows:
“ ‘1. I was the duly elected foreman and spokesman for the jury which decided the case of May v. Lloyd Noland Hospital, et al.
“ ‘2. This Affidavit is given with my personal knowledge.
“ ‘3. During the course of our deliberations, the jury considered and discussed issues relating to the actions of several physician employees of Lloyd Noland Hospital regarding various decisions *1212 about the medical treatment of Lepo May.
“ ‘4. We understood that the hospital would be responsible for the negligent acts of its physician employees.
“ ‘5. In agreeing to award the plaintiff a verdict of $4,000,000, our unanimous decision was based solely on the conduct of the physicians. The jury did not base its verdict on the determination that any non-physician employees of Lloyd Noland Hospital were in any way negligent.’
“AHAT has also submitted the affidavit of Robert Parsons, the attorney representing and defending Lloyd Noland in CV 79-0583. Noting that Lloyd Noland was named as an additional insured on the insurance policies issued by MASA insuring physician employees of Lloyd Noland, Parsons states under oath that it was AHAT’s position in the May case that the alleged malpractice was solely the act or omission of the physician employees of Lloyd No-land. Parsons also mentions other cases involving lawsuits against Lloyd Noland and its physician employees in which MASA assumed the defense of Lloyd No-land and settled the claims without any contribution from AHAT.’
“MASA has acknowledged that its insurance policy provided coverage to Lloyd No-land for liability resulting from the acts or omissions of Habachy and Park. However, MASA says that it was never determined by the jury or the trial court that Lloyd Noland’s liability to May resulted in whole or in part from the negligent acts of Ha-bachy or Park. MASA says that May also made claim against Lloyd Noland based on the acts or omissions of its non-physician employees. MASA says that since the jury returned a general verdict against Lloyd Noland and made no special findings of fact, it cannot be ascertained from the verdict whether the liability of Lloyd Noland was based on the acts or omissions of either or both of the physician and non-physician employees.
“In support of this position, MASA has submitted the affidavit of Thomas E. Dut-ton, one of the attorneys representing May in CV 79-0583. Dutton states in part in his affidavit:
“ T was one of the attorneys that represented the plaintiff in the case of Albert May, etc. v. Lloyd Noland Hospital, et al., Circuit Court of Jefferson County, Alabama, Civil Action No. CV 79-00583. The claims of the plaintiff in this case included claims that the Bird respirator which was provided by Lloyd Noland Hospital was inappropriate for use on small children and that the MA-1 respirator was inappropriately used by Lloyd Noland Hospital. The plaintiff claimed that Lloyd Noland Hospital was negligent in providing the Bird respirator and negligent in inappropriately using the MA-1 respirator.’
“MASA has also submitted a question and answer form completed by Jerry Argo following the jury verdict in the May case in which Jerry Argo answered as follows to Question No. 6:
“ ‘6. Do you feel the hospital was guilty of negligence in providing the Mark XIV respirator which was provided for the child in the recovery room?
“ ‘A. Yes. Improper ventilator used or not used properly.’
“MASA has also submitted a question and answer form completed by other member[s] of the same jury who answered yes to the above question number 6. Those members included Johnny M. Cook, Ann Terry, Harvey M. Gilliam, Yolinda Brun-son, and Paula Bentley.
“By submitting the affidavit of the foreman of the jury, AHAT sought in effect to establish special findings of fact by the jury verdict more than three years after the verdict was rendered. The affidavit of a juror cannot be admitted in evidence after the trial for the purpose of establishing the negligent conduct which was the basis of the jury verdict. Andrews v. O’Hearn, 387 N.W.2d 716 (N.D.1986); Chalmers v. City of Chicago, 92 Ill.App.3d 54, 47 Ill.Dec. 503, 415 N.E.2d 508 (1980), aff'd, 88 Ill.2d 532, 59 Ill.Dec. 76, 431 N.E.2d 361 (1982); Iowa-Des Moines Nat’l Bank v. Schwerman, 288 N.W.2d 198, 204 (Iowa 1980); Menza v. Diamond Jim’s, Inc., 145 *1213 N.J.Super. 40, 366 A.2d 1006 (1976); Tenedios v. William Filene’s Sons Co., Inc., 20 Mass.App. 252, 479 N.E.2d 723 (1985); Cove, Inc. v. Mora, 172 Cal.App.3d 97, 218 Cal.Rptr. 7 (1985); Russo v. Rifkin, 113 A.D.2d 570, 497 N.Y.S.2d 41 (1985); Miami Herald Publishing Co. v. Frank, 442 So.2d 982 (Fla.Dist.Ct.App.1983).
“In Iowa-Des Moines Nat’l Bank v. Schwerman, supra, the Supreme Court of Iowa stated:
“ ‘We summarily treat the last prong of defendants’ complaint first. The verdicts were lump-sum amounts presumably incorporating the several damage elements. Defendants made no request for separate special verdicts under Iowa R.Civ.P. 205. See Team Central, Inc. v. Teamco, Inc., 271 N.W.2d 914, 925 (Iowa 1978). Defendants instead attempted to prove by the jury foreman’s affidavit the separate sum the jury computed for loss of services and support and incorporated in the lump-sum verdict. We are not persuaded the verdict may be so explained. See Cavanaugh v. Jepson, 167 N.W.2d 616, 624-25 (Iowa 1969); State v. Dudley, 147 Iowa 645, 653, 126 N.W. 812, 815 (1910). In any event, this problem may not recur on retrial.’
“In Tenedios v. William Filene’s Sons Co., Inc., supra, the plaintiff made claim against Joseph Bisson, the security manager for William Filing’s and also William Filing’s for false imprisonment, malicious prosecution and abuse of process. Following a trial, the jury returned verdicts in her favor against each defendant for $1,000.00 on counts of false imprisonment; $35,-000.00 on counts of malicious prosecution; and $4,000.00 on abuse of process. The judge on the motion of the defendants entered a statement that the total recovery was $40,000.00 cast jointly and severally against the two defendants. Tenedios then moved for a judgment of $80,000.00. In support of her motion, she filed an affidavit of the jury foreman purporting to show how the jury reached their verdict and that they intended the larger amount. Affirming the judgment of the trial court, the Appeals Court of Massachusetts stated:
As to the foreman’s affidavit, it could not be considered, as it went to the mental processes of the jurors in arriving [at] their verdicts, whether in carrying out the judge’s instructions or in conceiving of the consequences of their own findings. ...’
“In the present case now before this Court, the affidavits and answers of the jurors to questionnaires make evident the reason for the rule disallowing the use of jurors’ affidavits to explain their verdict or to in effect make special findings of fact with respect to their verdict.
“Counsel representing Lloyd Noland and supplied by AHAT could have asked the Court to require the jury to make special findings of fact at the time the case was submitted to the jury. AHAT and Lloyd Noland elected not to do so. They cannot now ask this Court to determine from the affidavits of the jurors or the other evidence submitted at the trial whether the verdict against Lloyd Noland was based on the negligence of Habachy and Park or whether the verdict against Lloyd Noland was based on evidence concerning the negligence of other physicians or employees of Lloyd Noland.
“AHAT argues that MASA had primary coverage and that it had only excess coverage. According to AHAT, MASA thus had the primary duty to pay up to the full limits of its coverage before AHAT was required to pay. However, it has not been established and cannot be established at this point whether the jury’s verdict was based on the conduct of Lloyd Noland’s chief executive officer or members of its governing body, all of whom are provided coverage under the AHAT policy. It has not been established whether the jury’s verdict was based on the conduct of Lloyd Noland’s non-physician employees, all of whom are also provided coverage under the AHAT policy.
“AHAT says in the last brief submitted by its counsel that it is undisputed that Lepo May died from causes associated with his pulmonary edema. Counsel relies on the testimony of Dr. Gunter Corssen, an expert witness for the plaintiff, to argue *1214 that doctors Park and Friend were responsible for placing Lepo May on the Byrd respirator contrary to the warning of its unsuitability. Lepo remained on the Byrd ventilator for a period of approximately two hours and was then transferred to the Intensive Care Unit, where he was placed on the volume ventilator known as the MA-1 ventilator. Lloyd Noland did not then have the pediatric ventilator designed for use with small infants such as Lepo May.
“Dr. Gunter Corssen testified that Lepo’s condition appeared to improve after he was placed on the MA-1 ventilator and that his condition then began to deteriorate markedly as the result of an accidental extubation. However, Dr. Corssen also said that Lepo’s condition was critical at the time he was taken off the Byrd respirator and that the MA-1 respirator was not the optimal equipment. Corssen stated at one point in his testimony that it was quite possible that Lepo’s death was caused by inadequate ventilation in the recovery room.
“Dr. James Arens, another expert testifying for the plaintiffs, stated that the MA-1 ventilator was a very difficult ventilator to use on babies. He recounted an experience where a small baby under his care in a Texas hospital encountered severe problems because of the use of an MA-1 ventilator at a time when all of that hospital’s pediatric respirators were in use.
“Dr. Arens testified that in August 1978 there were two ventilators manufactured especially for small babies, a Bourne ventilator, which was a pure volume ventilator; and a Sieckcrist ventilator, which Dr. Arens referred to as an assist ventilator. At page 250 of his testimony, Dr. Arens testified as follows:
“ ‘Q. Explain to us the difference, how a suitable ventilator suitably used on this baby over at Lloyd Noland from, let’s say, 9:55 on, assuming when he went from the operating room to the recovery room, he was placed on a suitably used suitable ventilator. Explain to us the difference in the effect of that ventilator on his pulmonary edema than what we know happened to his pulmonary edema while he was on the unsuitable ventilator over here and the one which was unsuitably used?
“ ‘A. The pulmonary edema would have gradually decreased. The pulmonary edema would have been so-called sucked up back into the lungs. The fluid would have cleared out of the lungs. The oxygenation in the baby would improve, and also the pulse rate would have gone down and his respiratory rate would have gone down.
“ ‘Q. Pulmonary edema would have cleared up?
“ ‘A. The pulmonary edema would have cleared up.’
“ “There is evidence to support the claim that Lloyd Noland was liable for the death of Lepo May because of its failure to have available for use a pediatric ventilator.
“AHAT also argues that Lloyd Noland’s failure to have a pediatric ventilator available for use would only have been the product of an omission on the part of members of the Lloyd Noland medical staff who failed to adequately assess their clinical needs for this piece of specialized equipment.
“Lloyd Noland here relies again on the affidavit of Dr. Friend, who has stated in his affidavit that the acquisition of any piece of specialized equipment for clinical use by Lloyd Noland would have been accomplished through a process of review and recommendation by the appropriate departments of the hospital medical staff. However, no reference is made to any specific discussion regarding the acquisition of the pediatric ventilator. Consequently, it is not possible to know whether members of the medical staff recommended its purchase and the same was then overturned by Lloyd Noland’s hospital administrator or its chief executive officer.
“In the AHAT insuring agreement, Lloyd Noland itself is named as a person covered. In addition, other persons covered include Lloyd Noland’s chief executive officer and its hospital administrator and hospital supervisor. If the failure to provide the pediatric ventilator was the fault of any of those persons, AHAT’s obligation *1215 to Lloyd Noland would be primary rather than excess.
“The difficulty with AHAT’s position in this case is that AHAT now seeks a determination by this Court that the death of Lepo May in August 1978 was caused only by the negligence of Park and Habachy, physician employees of Lloyd Noland. However, the claims asserted against Lloyd Noland as a result of the death of Lepo May have already been resolved by a jury verdict and judgment. The question presented is whether the jury verdict against Lloyd Noland was based in whole or in part on Lloyd Noland’s failure to have a pediatric ventilator available for use in its Intensive Care Unit at the time of Lepo May’s death. This Court has determined that evidence was presented which would support a jury verdict on this theory. Since no special interrogatories were submitted to the jury, it is not possible for this Court to now determine what was the basis for the jury verdict finding Lloyd Noland liable.
“If the verdict against Lloyd Noland was-based in whole or in part on its failure to provide a pediatric ventilator, then AHAT’s insurance coverage could also be primary rather than excess and it would have no right of subrogation, either equitable or otherwise.
“AHAT also makes a novel argument that it is entitled to proration with MASA on the theory that MASA had provided insurance coverage for eight individual physician employees of Lloyd Noland whose errors or omissions were criticized by the plaintiff’s expert witnesses or said by such expert witnesses to be applicable to the pediatric ventilator issue. It then argues that under the MASA ‘other insurance’ proration clause, each policy would owe ⅝ of the total amount of the settlement of $1,725,000.
“The first difficulty with this argument is that it cannot now be established whether the jury verdict against Lloyd Noland was based on the negligence of any one or more of the physician employees or was based on the negligence of non-physician employees of Lloyd Noland.
“Furthermore, under its ‘other insurance’ clause, MASA’s insurance contract merely provides that when its insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, MASA will not be liable for a GREATER proportion of the loss than would be payable if each insurer contributed an equal share. As this Court reads the ‘other insurance’ provision in the MASA policy, it does not obligate MASA to a pro rata contribution but merely puts an outer limit on MASA’s obligation.
“After a full and careful consideration of the evidence, it is this Court’s conclusion that the motion for partial summary judgment filed by AHAT is due to be overruled and that the motion for summary judgment filed by MASA is due to be granted.
“Accordingly, the motion for partial summary judgment filed by AHAT is hereby overruled. The motion for summary judgment filed by MASA is hereby granted. Judgment is hereby rendered in favor of the defendant, Mutual Assurance Society of Alabama. All costs of court incurred in this proceeding are hereby taxed against the plaintiff, Alabama Hospital Association Trust.
“Done this 2nd day of March 1988.
“s/Marvin Cherner
“CIRCUIT JUDGE”
“ * Parsons’s affidavit refers to a number of other cases in which he says MASA assumed the defense on behalf of Lloyd Noland and ultimately paid the amount required for the compromise of those claims. Parsons’s affidavit is disputed by the affidavit of Wesley M. Foster, Jr., the Administrative Vice President of MASA with responsibility of handling of claims, and also the affidavit of W. Stancil Starnes, a member of the law firm defending certain of the doctors involved in those other cases. In short, MASA denies that it ever assumed the defense of Lloyd Noland except in a case where the plaintiff admitted that his only theory of liability against Lloyd Noland was based on the negligence of the doctor employee who had insurance coverage under the MASA policy.
"Because the decision in this case will be based on the provisions of the respective insurance contracts issued by AHAT and MASA, this Court considers it unnecessary to further detail the respective positions of AHAT and MASA with respect to other cases in which both entities provided insurance coverage.”
*1216 On appeal, AHAT argues that the trial court erred in requiring it to establish that Lloyd Noland was entitled to coverage under the “additional interests endorsement” [1] contained in each of the policies issued by MASA to Drs. Habachy and Park.
We cannot agree. The trial court correctly placed the burden on AHAT as the one seeking coverage to prove that coverage existed within the terms of the policy. Bankers Fire & Marine Insurance Co. v. Contractors Equipment Rental Co., 276 Ala. 80, 159 So.2d 198 (1963). The issue in this case is whether the verdict in the May case against Lloyd Noland was based upon the jury’s finding that Lloyd Noland was liable because of the negligence of the two medical doctors, Habachy and Park. This is impossible to resolve, because the verdict of the jury was a general one and because there was evidence from which the jury could have found liability as to Lloyd No-land based upon the negligence of other employees of Lloyd Noland. Absent a special verdict, the fact of coverage is impossible to prove. Therefore, the trial court correctly resolved this issue against AHAT.
AHAT also argues that MASA is estopped to deny coverage because it did not undertake to defend Lloyd Noland in the May case (presumably under a reservation of rights). A failure of an insurer to defend a claim against an insured does not work an estoppel on the issue of coverage. Alabama Farm Bureau Mutual Casualty Insurance Co. v. Moore, 349 So.2d 1113 (Ala.1977), rejected an argument similar to AHAT’s, in the following language:
“We reject the proposition that an insurer’s liability to pay for damages may stem from a breach of its duty to defend. The two duties are to that extent independent. In other words, an insurance company may be liable for attorney’s fees for breaching its duty to defend any groundless, false and fraudulent suits that potentially come within the policy where the suit is won by the insured, but such a breach in a suit lost by the insured does not automatically mean that the insured will be liable for total damages; the latter will turn on whether the insured had coverage.”
The trial court’s order is adopted as part of the opinion of this Court, and the judgment is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ADAMS, HOUSTON and STEAGALL, JJ., concur.

. “Additional interests endorsement. It is agreed that the ‘PERSONS INSURED UNDER PART I' section of the above-numbered policy is amended to include See * NAME SCHEDULE but only with respect to liability arising out of acts or omissions of the named insured Han Y. Park, M.D. or of any person for whose acts or omissions the named insured is legally responsible. It is further agreed that inclusion of SEE * NAME SCHEDULE as an insured shall not serve to increase the limits of liability applicable to PART I — COVERAGE A — as shown in the policy declarations.
“ * NAME SCHEDULE: The Lloyd Noland Foundation, Inc. The Medical Clinic Board of the City of Fairfield
"Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned policy, other than as above stated."