574 So.2d 716 (1990)
UNIVERSAL UNDERWRITERS INSURANCE COMPANY
v.
EAST CENTRAL ALABAMA FORDMERCURY, INC., et al.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY
v.
FORD MOTOR COMPANY, INC., et al.
89-541, 89-613 to 89-622.
Supreme Court of Alabama.
September 28, 1990.
As Modified on Denial of Rehearing January 18, 1991.
*717 David E. Allred of Hill, Hill, Carter, Franco, Cole & Black, Montgomery, and Bibb Allen of Rives & Peterson, Birmingham, for appellants.
H. Dean Mooty, Jr. of Capell, Howard, Knabe & Cobbs, Montgomery, for appellees Auburn Ford Lincoln Mercury, Inc. and Fred Rich.
Susan Shirock DePaola of Samford & Depaola and John N. Pappanastos, Montgomery, for appellee Mamie R. Green.
Edward B. Parker II, Montgomery, for appellee East Central Alabama Ford-Mercury, Inc.
Tabor R. Novak, Jr., Montgomery, for appellee Ford Motor Co. and Ira DeMent, Montgomery, for Youngblood-Perry Lincoln Mercury, Inc.
John W. Haley of Hare, Wynn, Newell & Newton, Birmingham, for amicus curiae Alabama Trial Lawyers Assoc.
HORNSBY, Chief Justice.
This opinion consolidates several cases concerning the right of Universal Underwriters Insurance Company ("Universal") to intervene in various lawsuits pending against defendants insured by Universal. We affirm the ruling of the trial court in *718 each case that Universal is not entitled to intervene under the present circumstances, but we remand the case for further proceedings consistent with this opinion.

FACTS
In the first case ("East Central Alabama Ford-Mercury, Inc."), plaintiff Mamie Green sued defendants East Central Alabama Ford-Mercury, Inc., and Auburn Ford Lincoln-Mercury, Inc., claiming fraud; breach of express warranty; violation of the Magnuson-Moss Warranty Act; willful, wanton and reckless conduct; and conspiracy. The plaintiff alleges that the defendants sold automobiles repurchased from rental car companies as "factory executive" automobiles, i.e., as cars not previously owned or titled to anyone other than Ford Motor Company.
Universal, as the defendants' insurer, sought to intervene in the suit for the sole purpose of submitting special interrogatories or a special verdict form to the jury. Universal was attempting to resolve any insurance coverage questions that might be involved in the case without making its presence as an insurer known to the jury. Universal contends that some of the claims might be covered by Universal's policy and some might not be.
Under the insurance policy, Universal is obligated to indemnify for an injury caused by an "occurrence," which is defined under the policy as an accident resulting in injury "neither intended nor expected" by the insured. Universal contends that the intentional acts alleged in Green's complaint do not constitute an "occurrence." Universal also argues that the allegations of breach of express warranty and violation of the Magnuson-Moss Warranty Act are not expressly covered under the policy because each is an allegation of a breach of contract. In addition to its argument regarding the term "occurrence," Universal argues that the insurance policy specifically excludes fraudulent or intentional acts committed by its insured. In light of its uncertainty on these issues, Universal argued to the trial court that it was entitled to intervene because, it said, a determination of its liability under the insurance policy would be impossible if the jury returned a general verdict. The trial court, however, denied the petition to intervene. Universal appeals.
Consolidated with East Central Alabama Ford-Mercury, Inc. for purposes of this opinion are several cases in which Universal, as insurer of Youngblood-Perry Lincoln Mercury, Inc., and Franklin Perry, appeals from a denial by the trial court of its motion to intervene. These cases have previously been consolidated in Universal Underwriters Ins. Co. v. Youngblood, 549 So.2d 76 (Ala.1989); these were before this Court on a different issue. In July 1989, this Court affirmed the trial court's ruling in Youngblood, holding that Universal had a duty under its insurance policy to defend the 10 actions filed against its insureds. The cases consolidated in Youngblood involved claims alleging breach of contract, negligence, misrepresentation, and suppression of material facts.
After our ruling in Youngblood, Universal sought to intervene pursuant to A.R. Civ.P. 24(a)(2) and 24(b)(2) for the purpose of presenting to the trial court either special verdict forms or special interrogatories to be given to the jury at the end of the trial. In an argument analogous to its argument in East Central Alabama Ford-Mercury, Inc., discussed above, Universal contends that it is faced with a situation where, under Universal's insurance policy, some of the claims made by the plaintiffs are covered, but others may not be covered. Universal argues that the incidents alleged in the contract counts are excluded from coverage by a provision in the policy and that the acts of intentional fraud alleged in the misrepresentation and suppression-of-material-facts counts are not included within the policy's definition of an "occurrence." Universal further contends that if a general verdict is returned against the insured defendants, Universal will have no way to determine what claims are covered under the policy. Based on these arguments, Universal asserts that it has an interest relating to the subject matter of the action that, under the rules of fairness *719 and equity, gives it a right of intervention, or, in the alternative, that permissive intervention should be allowed. The trial court denied the petition, and Universal appeals.

DISCUSSION
We first note that an order denying intervention as of right is appealable. Thrasher v. Bartlett, 424 So.2d 605 (Ala. 1982). Universal claims that intervention is proper as of right under A.R.Civ.P. 24(a) or permissively under Rule 24(b).
Universal states that it is providing a defense for its insureds, East Central Alabama Ford-Mercury, Inc., Auburn Ford Lincoln-Mercury, Inc., Youngblood-Perry Lincoln Mercury, Inc., and Franklin Perry, pursuant to reservation of rights provisions whereby Universal may deny coverage after final determination of the case. Universal notes that under L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., 521 So.2d 1298 (Ala.1987), the attorney provided by the insurer to defend the insured is responsible to and obligated to the insured solely and not to the insurer. Under L & S Roofing Supply, the attorney provided by the insurer is constrained by an "enhanced obligation" to represent only the insured. The attorney under such a duty can take no action that would be detrimental to the insured's interest. It follows that defense attorneys hired by Universal for its insureds cannot represent Universal's interests and, consequently, cannot request special interrogatories or special verdicts concerning the coverage issue. Moreover, Universal is obligated to defend against all claims advanced by the insureds, even those not covered by the policy. Ladner & Co. v. Southern Guaranty Ins. Co., 347 So.2d 100 (Ala.1977).
Universal argues that its interest will not be adequately protected unless it is allowed to intervene for the limited purpose of proposing special interrogatories or submitting special verdict forms to the jury so that the theories on which the jury's verdict is based can be determined. In support of this contention, Universal relies heavily on this Court's decision in Alabama Hospital Association Trust v. Mutual Assurance Society of Alabama, 538 So.2d 1209 (Ala.1989). In that case, Alabama Hospital Association Trust ("AHAT") appealed from a summary judgment entered in favor of Mutual Assurance Society of Alabama ("MASA"). The claim arose from a prior medical malpractice judgment against certain doctors, who were insured by MASA, and Lloyd Noland Hospital, who was insured by AHAT. Both insurers provided attorneys for their insureds. After the trial, the "`case was then submitted to the jury on [plaintiff] May's claim against Lloyd Noland based at least in part, if not wholly, on the negligence of Habachy and Park.'" Id. at 1211 (quoting the trial court's opinion). The attorneys failed to request any special findings of fact by the jury, and the jury returned a general verdict in favor of May and against the hospital. AHAT paid part of the judgment and MASA paid part. Subsequently, AHAT claimed that it was a subrogee of the hospital for the recovery from MASA for the portion of the judgment that had been paid by AHAT. AHAT argued that the claim and the subsequent judgment against the hospital were based only on the negligence of the doctors, and that as a result, MASA, as the doctors' insurer, was the primary insurer and AHAT was the secondary insurer. In support of its argument, AHAT presented an affidavit of Jerry Argo, the foreman of the jury that had rendered the general verdict against the hospital. The affidavit, however, was executed more than three years after the verdict had been rendered.
The trial court stated that "`[b]y submitting the affidavit of the foreman of the jury, AHAT sought in effect to establish special findings of fact by the jury verdict more than three years after the verdict was rendered.... [Such affidavit] cannot be admitted in evidence after the trial for the purpose of establishing the negligent conduct which was the basis of the jury verdict.' " Id. at 1212 (quoting the trial court's opinion) (citations omitted). The trial court further stated:
"In the present case now before this Court, the affidavits and answers of the *720 jurors to questionnaires make evident the reason for the rule disallowing the use of jurors' affidavits to explain their verdict or to in effect make special findings of fact with respect to their verdict.
"Counsel representing Lloyd Noland and supplied by AHAT could have asked the Court to require the jury to make special findings of fact at the time the case was submitted to the jury. AHAT and Lloyd Noland elected not to do so. They cannot now ask this Court to determine from the affidavits of the jurors or the other evidence submitted at the trial whether the verdict against Lloyd Noland was based on the negligence of Habachy and Park or whether the verdict against Lloyd Noland was based on evidence concerning the negligence of other physicians or employees of Lloyd Noland."
Id. at 1213.[1]
This Court agreed with the rationale of the trial court:
"The issue in this case is whether the verdict in the May case against Lloyd Noland was based upon the jury's finding that Lloyd Noland was liable because of the negligence of the two medical doctors, Habachy and Park. This is impossible to resolve, because the verdict of the jury was a general one and because there was evidence from which the jury could have found liability as to Lloyd Noland based upon the negligence of other employees of Lloyd Noland. Absent a special verdict, the fact of coverage is impossible to prove."
Id. at 1216.
Universal argues that this Court recognized the impossibility of going behind a general verdict to determine the theories on which the jury based its verdict and that it noted the trial court's suggestion for a cure to the problemasking "the court to require the jury to make special findings of fact at the time the case [is] submitted to the jury." Alabama Hospital Association Trust, supra, at 1213. Universal further argues that Alabama Hospital Association Trust is on "all fours" with the present case, except that in Alabama Hospital Association Trust the secondary insurer was seeking indemnity from the primary insurer. Universal states that even though it wishes to submit interrogatories or special verdict forms to the jury, it does not intend to participate in the jury phase of the trial. Therefore, Universal argues, its limited participation would not affect the cases presented by the plaintiffs.
Further, Universal asserts that Alabama Hospital Association Trust overrules United States Fidelity & Guaranty Co. v. Adams, 485 So.2d 720 (Ala.1986), wherein the Court affirmed the trial court's denial of USF & G's motion to intervene in the underlying suit filed by the plaintiffs. In Adams, the plaintiffs sued Alabama Elk River Development Agency for damages suffered as a result of construction defects in a house purchased from Elk River. Elk River filed a third-party complaint against Highland Rim Constructors, Inc., the contractor; USF & G, insurer for Highland Rim, moved to intervene in the action pursuant to Rule 24(a)(2).
"USF & G ... requested that it be allowed to intervene for the sole purpose of petitioning the trial court to submit the action to the jury on special verdicts with interrogatories. USF & G argued that its insurance policy with Highland Rim provided coverage for claims for damage as a result of faulty workmanship to the owner's personal property in the house, but excluded coverage for claims made for damage to the structure itself. USF & G asserted that, if the jury returned a general verdict, it would be impossible for USF & G to discern what portion of the verdict was awarded as a result of damage to personal property and what portion was for damage to *721 the structure. Therefore, USF & G contended, the court should give the jury special verdict forms to specify how much of the total award was for damage to the personal property in the house, as this is all it would be liable for under its policy with Highland Rim."
Id. at 721. The trial court, however, denied the motion and further denied USF & G's motion to reconsider. The trial court based its decision upon the determination that under Rule 24(a)(2) USF & G did not have an "interest" in the action. The trial court stated, and this Court agreed, that "`[t]he Petitioner does not have an interest in the transaction the subject of this lawsuit'" and that "`[i]ts interest is contingent upon the Plaintiffs' recovery of a verdict in the underlying action. The Petitioner may, by subsequent litigation, determine its liability in the event of the Plaintiffs' recovery.'" Id. (quoting the trial court's order).
The Adams Court also relied on Restor-A-Dent Dental Laboratories, Inc. v. Certified Alloy Products, Inc., 725 F.2d 871 (2d Cir.1984), in which the court found that the interest asserted by the insurance company was contingent upon the jury's verdict and the determination of indemnification of certain types of losses under the policy. The court in Restor-A-Dent focused primarily on whether the insurer had an interest sufficient to trigger the application of Fed.R.Civ.P. 24(a)(2). Although the court noted that the term "interest" was not easily definable, it deferred to the United States Supreme Court's statement that the interest necessary to support intervention of right must be "significantly protectable." See Donaldson v. United States, 400 U.S. 517, 531, 91 S.Ct. 534, 542, 27 L.Ed.2d 580 (1971). That is, the interest must be direct and not remote or contingent. This Court concluded in Adams that USF & G had no interest in the transaction because the interest was contingent upon whether the plaintiffs recovered a judgment.
Universal argues that Alabama Hospital Association Trust overrules Adams because Alabama Hospital Association Trust postdates Adams and because Adams is based on A.R.Civ.P. 24(a)(2), which requires a finding of an "interest." Universal bases its argument on the premise that the Alabama Hospital Association Trust Court recognized the insurer's dilemma and that the insurer was not a party to the underlying lawsuit. As a result, Universal maintains that this Court recognized the trial court's suggestion for a cure by way of special findings of fact as the only method in which the insurer could determine its contract obligation. Universal attempts to distinguish Adams by arguing that the court in Adams specifically found that the insurer did not have the interest required under Rule 24(a)(2), while the trial court in the present case made no such finding and summarily denied Universal's petition.
In her brief, Plaintiff Mamie Green argues that Adams controls and that Universal misinterprets Alabama Hospital Association Trust. In Alabama Hospital Association Trust, there was no motion to intervene, nor was there any suggestion that intervention would be proper.
We conclude that Adams and Alabama Hospital Association Trust involve different issues. In Alabama Hospital Association Trust, the insurer attempted to establish special findings of factsan evidentiary findingthree years after the jury had rendered its general verdict. In Adams, however, this Court, following the trial court's findings, concluded that the insurer did not have a sufficient interest under A.R.Civ.P. 24(a)(2) because its interest was contingent upon the plaintiffs' recovery in the underlying action. Further, the Alabama Hospital Association Trust Court considered the issue of subrogation or indemnity against another insurer, but not the issue of intervention. Because Alabama Hospital Association Trust and Adams involve different issues, we conclude that Adams was not overruled by Alabama Hospital Association Trust. We note further that Alabama Hospital Association Trust is not applicable to the present case because that case did not address the issue of intervention under A.R. Civ.P. 24(a)(2) and 24(b)(2). The analysis in *722 Adams is directly applicable on the issue of intervention.
Universal also contends that it has a sufficient interest under Rule 24(a)(2) because it has agreed to indemnify the defendants for certain contingent liabilities that may arise under the terms and conditions of its policies with the defendants. Universal argues that under the principle of indemnity, it has an interest sufficient to warrant intervention as of right and that that interest is not contingent.
Plaintiff Green argues, in opposition, that Adams, supra, controls because the interest here, like the interest in Adams, is contingent upon Green's recovery in the underlying action. Moreover, Green notes that when an insurer refuses to defend or defends under a reservation of rights, the insurer is not precluded from determining the coverage issue in a declaratory judgment action either before or after the resolution of the underlying action. See also L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., supra, at 1303-04 (relying on Tank v. State Farm Fire & Casualty Co., 105 Wash.2d 381, 715 P.2d 1133 (1986)). Additionally, as noted by Auburn Ford Lincoln-Mercury, Inc., the insureds would be prejudiced by further delay if Universal were allowed to intervene at such a late date in the proceedings.
A. INTERVENTION
In these consolidated cases, Universal moved to intervene under either A.R.Civ.P. 24(a)(2) or 24(b)(2). Rule 24(a)(2) provides for intervention of right:
"Upon timely application, anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties."
Rule 24(b)(2) provides for permissive intervention:
"Upon timely application anyone may be permitted to intervene in an action: ... (2) when an applicant's claim or defense and the main action have a question of law or fact in common."
1. Rule 24(a)(2)Intervention of Right
Crucial to our resolution of the question concerning Universal's right of intervention is a determination of the "interest" necessary to sustain that right. In State ex rel. Wilson v. Wilson, 475 So.2d 194 (Ala.Civ.App.1985), the Department of Pensions and Security ("DPS") sought to intervene in a contempt proceeding brought by a mother against the father in an action seeking child support. The mother had assigned her child support rights to the State of Alabama in an agreement whereby DPS would establish, collect, and enforce the child support.
The Court of Civil Appeals held that under Rule 24(a)(2) DPS had an interest sufficient to enable it to intervene. The court stated:
"To intervene in a proceeding under Rule 24(a)(2), the intervenor must have a direct, substantial, and legally protectable interest in the proceeding. United States v. Perry County Board of Education, 567 F.2d 277 (5th Cir.1978). There is no `clear-cut test' to determine if such an interest exists. Rather, courts should use a flexible approach, which focuses on the circumstances of each application for intervention. Perry County Board of Education, 567 F.2d at 279."
Id. at 196 (emphasis added). The court found that as an assignee, DPS had a sufficient interest in collecting the child support payments regardless of whether DPS made payments to the mother and regardless of whether the assignment took place before the divorce. Moreover, the court indicated that it was doubtful that DPS could be adequately represented in the contempt proceeding without intervention. The court further stated, "We must adopt an approach to Rule 24(a)(2) which measures the right to intervene `by a practical rather than a technical yardstick.'" Id. at 197. The court noted that the legislature intended that §§ 38-10-1 through -11, Ala.Code *723 1975, which provide for the enforcement and collection of child support, were to be construed broadly to effectuate the purpose of having parents, not the state, support their children.
This issue has also been analyzed in two other cases, Randolph County v. Thompson, 502 So.2d 357 (Ala.1987) (payment of sheriff's salary from county funds was a sufficient interest to allow the county intervention as of right in the sheriff's suit against the state for collection of his salary), and Blue Cross & Blue Shield of Alabama v. Mills, 526 So.2d 595 (Ala.Civ.App. 1988) (insurer's interest in the possible recovery of previously paid medical expense payments did not entitle it to intervene as of right in an underlying workmen's compensation case). See also United States Fidelity & Guaranty Co. v. Adams, supra.
This Court has held that an insurer does not have an interest when that interest is contingent upon the recovery in another action. United States Fidelity & Guaranty Co. v. Adams, supra. We find no rationale to distinguish Adams from the present case. In light of the foregoing authority, we find that Universal does not have a direct, substantial, and protectable interest. Because Universal lacks such an interest under Rule 24(a)(2), it may not intervene as of right. Nevertheless, nothing in our law would bar Universal from litigating the coverage issue in a declaratory judgment action after the resolution of the underlying cases in this matter.
2. Rule 24(b)(2)Permissive Intervention
Permissive intervention under Rule 24(b)(2) is within the broad discretion of the trial judge. See Restor-A-Dent Dental Laboratories, Inc., supra. The standard for determining whether permissive intervention should have been allowed is whether the trial judge abused his or her discretion.
In Restor-A-Dent, the trial judge denied the insurer's motion to intervene under Rule 24(b)(2) because such intervention would burden the litigation in progress because of the delay. In affirming the trial judge's decision, the Court of Appeals noted that if this were the only reason for denying the motion then there would be an abuse of discretion. However, the Court of Appeals held that the trial court properly denied the motion because of additional reasons, including: (1) that the insurer had no great need for the relief it sought; (2) that there was no assurance that the main action would not be delayed; and (3) that the intervention by an insurer who supplied the insured's attorney could deter a settlement or could create a conflict of interest. The court noted that trial court had the discretion to grant intervention and that if intervention was granted, then "in view of the economy of time and effort inherent in the use of interrogatories in this situation," the limited use of interrogatories to the jury would not be an abuse of discretion. Id. at 877.
Unlike Rule 24(a)(2), Rule 24(b)(2) is a discretionary tool to be used by the trial courts. In the present case, we find no abuse of discretion in the trial court's order denying intervention. Although the present case may be completely resolved if a jury in the underlying cases returns a verdict for the defendants, or if the plaintiffs proceed on undisputed claims, we, nevertheless, recognize the dilemma faced by insurers. Because of this dilemma, we set forth a procedure by which permissive intervention may be allowed in this and similar cases.

PROCEDURE
Under this alternative procedure for permissive intervention, the trial would be bifurcated. In the first phase of the trial, the jury or judge would resolve issues of liability between the plaintiff and the insured defendant. The second phase would occur only if the jury or judge in the first phase rendered a verdict or judgment against the insured defendant. In the second phase, the insurance company would be allowed to enter and try, before the same jury or judge, only the insurance coverage issue. We emphasize that because of the many factors involved, a bifurcated *724 trial is not a matter of right for the insurer, but, rather, the decision of whether to allow intervention under this alternative procedure will rest within the discretion of the trial court as governed by the interests of justice and those factors articulated in A.R.Civ.P. 42(b). In order to avail itself of this remedy, the insurer must make, within a reasonable time, a motion to intervene under this procedure. The motion should be similar to a complaint for declaratory judgment made pursuant to A.R.Civ.P. 57. Should the trial court choose to allow intervention under this procedure, the insurer would be included in the discovery process with all parties in the underlying action. We note particularly that the insurer would be required to make available to the plaintiff, in the underlying action, all facts discoverable pursuant to the Alabama Rules of Civil Procedure, as well as the relevant insurance policy or policies. During the first phase, neither the jury nor the judge would consider the insurer's participation or the coverage issue. The jury would become aware of the insurer and the coverage issue only in the event that it rendered a verdict in the plaintiff's favor in the first phase. The judge would consider the coverage issue only if he or she rendered a judgment for the plaintiff in the first phase. If such a verdict or judgment occurs, then the trial would proceed to the second phase. In the second phase, the same jury or judge would hear and decide the coverage issue between the defendant insured and the insurer.
Bifurcated trials are not unusual in Alabama and are recognized under A.R.Civ.P. 42(b):
"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims or issues, always preserving inviolate the right of trial by jury as declared by Article 1, Section 11 of the Alabama Constitution of 1901."
Id. (emphasis added.) The comments to Rule 42(b) further emphasize that a trial court has broad freedom to order separate trials on different issues or with respect to different parties in order to effectuate the goals of justice and judicial economy. This Court recognized in Coburn v. American Liberty Insurance Co., 341 So.2d 717 (Ala. 1977), that Rule 42(b) may be used to separate the issues of liability from those of damages in a negligence case. The Court noted that the trial court is in a "position to evaluate, within the posture of the case, the matter of trial convenience and to shape the order of trial." See also Ex parte R. B. Ethridge & Associates, Inc., 494 So.2d 54 (Ala.1986) (Rule 42(b) gives the trial courts great flexibility in complex litigation cases); Key v. Robert M. Duke Ins. Agency, 340 So.2d 781 (Ala.1976) (distinction between separation and severance).
In addition to Rule 42(b), the Alabama Rules of Civil Procedure provide for separation of liability insurance coverage claims from damages claims. A.R.Civ.P. 18(c) provides as follows:
"In no event shall this or any other rule be construed to permit a jury trial of a liability insurance coverage question jointly with the trial of a related damage claim against an insured."
The comments to Rule 18(c) add:
"The provisions of Rule 18(c) have been inserted to prevent a joint trial on the issue of insurance coverage and a related damage claim in those actions wherein the provisions of Rule 18 have permitted joinder of those claims for pleading purposes or where such an issue is presented by third party action, counterclaim, cross-claim or in a declaratory judgment proceeding."
In Desroches v. Complete Auto Transit, Inc., 409 So.2d 417 (Ala.1982), the trial court ordered separate trials on the issue of liability and the issue of the validity of release agreements. In Desroches, the plaintiff signed release agreements and covenants not to sue and accepted money from the insurance company. She later retained counsel and sought to return the money and rescind the release agreements, *725 but the insurance company refused, and an action ensued. The defendants successfully moved the trial court to order separate trials on the issues of liability and of the validity of the release agreements. The plaintiff argued that the trial court exceeded its authority under Rule 42 in ordering separate trials. This Court, however, stated that "[f]or resolution of this issue we need look no further than subsection (c) of Rule 18, ARCP." Id. at 418. See also Holloway v. Nationwide Mutual Ins. Co., 376 So.2d 690 (Ala.1979) (recommendation on remand that A.R.Civ.P. 18(c), 21, and 42(b) be utilized to avoid problems encountered at trial). Clearly, bifurcated trials are recognized and used in Alabama procedure in "furtherance of convenience or to avoid prejudice, or ... [when] conducive to expedition and economy." A.R.Civ.P. 42(b).
Although we recognize that Rules 42(b) and 18(c), are primarily applicable to joinder issues, we view these rules as instructive. The trial courts should consider the foregoing as guidance in deciding whether to allow permissive intervention under the procedure announced in this case.
We take special note of the distinction made in Key v. Robert M. Duke Ins. Agency, supra, between an order of severance and an order for separate trials. As stated in Key, severed claims become independent actions with judgments entered independently, while separate trials lead to one judgment. Key held that A.R.Civ.P. 54(b) applied "to actions in which `separate trials' are ordered pursuant to Rule 42(b)," but did not apply to claims severed from the original action. Id. at 783.[2] Because of the distinction between a severance and an order of separate trials and because of this Court's reliance on Rule 42(b) for the alternative procedure, we envision that this procedure for permissive intervention would result in separate trialsa first trial on the issue of liability and a second trial on the issue of insurance coverage. The logical result of the distinction made in Key between separate trials and severance is that the case would be final and appealable only when the necessary trials are completed.
Other jurisdictions have also recognized the utility of bifurcated trials. In California, the Court of Appeal in Equitable Life Assurance Society v. Berry, 212 Cal. App.3d 832, 260 Cal.Rptr. 819 (1989), held that bifurcation of trial to try the issue of insurance coverage was proper. See also Ahmed v. Peterson, 186 Cal.App.3d 374, 230 Cal.Rptr. 636 (1986) (bifurcation of breach of contract claim from negligence claim for purposes of introducing evidence was proper remedy); Wheels & Brakes, Inc. v. Capital Ford Truck Sales, Inc., 167 Ga.App. 532, 307 S.E.2d 13 (1983) (severance is a matter of discretion for the trial judge.). See generally Page & Sigel, Bifurcated Trials in Texas Practice: The Advantages of Greater Use of Texas Rule of Civil Procedure 174(b), appearing in 9 Rev. Litigation 49 (1990) and 53 Tex.B.J. 318 (April 1990) (expounding on the benefits of bifurcated trials under Rule 174(b), Texas Rules of Civil Procedurea provision similar to A.R.Civ.P. 42(b)).
In addition, we note that the Wisconsin legislature and judiciary have recognized the dilemma faced by insurance companies on insurance coverage disputes and have provided a remedy similar to the one enunciated in the present case. The Wisconsin legislature provided:

*726 "If an insurer is made a party defendant pursuant to this section and it appears at any time before or during the trial that there is or may be a cross issue between the insurer and the insured or any issue between any other person and the insurer involving the question of the insurer's liability if judgment should be rendered against the insured, the court may, upon motion of any defendant in the action, cause the person who may be liable upon such cross issue to be made a party defendant to the action and all the issues involved in the controversy determined in the trial of the action or any 3rd party may be impleaded as provided in s. [Wis.Stat. §] 803.05 [(1988)]. Nothing herein contained shall be construed as prohibiting the trial court from directing and conducting separate trials on the issue of liability to the plaintiff or other party seeking affirmative relief on the issue of whether the insurance policy in question affords coverage. Any party may move for such separate trials and if the court orders separate trials it shall specify in its order the sequence in which such trials shall be conducted."
Wis.Stat. § 803.04(2)(b) (1988) (emphasis added).
In Mowry v. Badger State Mut. Casualty Co., 129 Wis.2d 496, 385 N.W.2d 171 (1986), a case involving breach of contract and bad faith failure to settle within the insurance policy limits, the Wisconsin Supreme Court recognized the competing interests between an insured, an insurer, and a plaintiff in an action for damages:
"When an insurer is certain of its insured's liability for an accident and where damages to the victim exceed policy limits, the insurer would normally be responsible for indemnifying its insured to the extent of its policy limits. The insurer, however, experiences a conflict of interests whenever an offer of settlement within policy limits is received where a legitimate question of coverage under the policy also exists. The insurer will be reluctant to settle within policy limits if there is a likelihood that coverage does not exist...."
129 Wis.2d at 507-512, 385 N.W.2d at 177-78 (citations omitted). The court in Mowry found that the insurance company did not act in bad faith in refusing to settle the claim within the policy limits, because the issue of coverage was fairly debatable. Id. at 512-16, 385 N.W.2d at 179-80. The court further noted:
"[T]his court has endorsed the use of the separation mechanism to avoid conflicts of interest between the insured and the insurer. The separation procedure is, to some extent, mutually beneficial: The insurer is able to ascertain whether coverage exists prior to its indemnification of the insured; the insured is able to ascertain prior to the insurer's undertaking of his defense whether the defense would have had any taint of a conflict of interest due to a coverage question.
"....
"... Section 803.04(2)(b), authorizes the trial court to sever and try issues separately, at its discretion. The statute does not on its face affect the rights and duties to a contract. As we mentioned above, however, the existence of coverage under a contract precedes an insurer's duty to settle. The precise reason an insurer litigates a coverage issue is to release itself from any settlement and defense obligations. To require it to settle prior to the coverage trial is antithetical to the purpose of the bifurcation statute. Thus, the mere fact that an insurer refuses an offer to settle within policy limits during the pendency of a coverage trial does not mean that the insurer has breached a duty owed to its insured."
Id. 385 N.W.2d at 183-84.[3]
Because the present case introduces an alternative method for permissive intervention, *727 the trial court on remand may, in its discretion, grant or deny Universal's motion to intervene in a bifurcated action. If the trial court grants the motion to intervene for bifurcated trials, it should permit discovery with respect to Universal by the plaintiffs and schedule the proceedings for completion and trial by a set date. In the future, however, the insurer must file its motion to intervene in a bifurcated action within a reasonable time of its determination that insurance coverage disputes may exist. As with any discretionary device, the trial court's denial of such motions will be measured under the "abuse of discretion" standard. In addition, insurers and insureds, in the present case and in future cases, may have separate counsel. We emphasize that the trial courts must take extreme care so as to prevent inconsistent verdicts through the use of this procedure.

CONCLUSION
In light of the law under United States Fidelity & Guaranty Co. v. Adams, supra, and its progeny, we hold that Universal has not shown the required interest under A.R.Civ.P. 24(a)(2) to entitle it to intervene as of right. Further, we find no abuse of discretion in the trial court's denial of permissive intervention under A.R. Civ.P. 24(b)(2). However, in light of the alternative procedure set forth herein, we remand the case to the trial court for further consideration. Accordingly, the orders denying intervention are affirmed, and the cases are remanded for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.
MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
JONES, J., dissents, with opinion.
HOUSTON, J., dissents.
JONES, Justice (dissenting).
The majority opinion gives new meaning to the old expression "Too much sugar for a dime." "Overkill" is a mild description for the complicated bifurcated procedure prescribed by the majority as a substitute for the simple use of Rule 49, A.R.Civ.P. Having voluntarily offered to submit itself to the jurisdiction of the court, and thus having agreed to be bound by the jury verdict in the trial by the plaintiff against its potential insured, Universal, the insurer, asks simply to be allowed to intervene for the limited purpose of invoking Rule 49, which authorizes the jury's use of special interrogatories to designate under which, if any, of the claims it found for the plaintiff.
One would have thought (or at least I did) that the intervention prescribed in Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala.1988), would be interpreted as direct authority (if, indeed, common sense was not of itself sufficient authority) for the proposition that Universal's interest in the outcome of the instant litigation, albeit both limited and contingent, would permit intervention concomitant with its limited interest. Indeed, Nationwide's interest in the Lowe case was equally limited and contingent.
The insurer's interest in both this case and in Lowe, in a broad sense, deals with the issue of coverage. In Lowe, the insured had no underinsured coverage (and, thus, the insurer had no liability) unless the jury's verdict for the plaintiff exceeded the amount of the primary coverage. Here, the insurer has no liability to the plaintiff, unless the jury awards the plaintiff damages under a theory of liability for which the policy provides coverage. A general verdict for this plaintiff may be sufficient for execution against these defendants, but, because certain of the plaintiff's theories are clearly outside the coverage provided by the policy, it would obviously not be sufficient for execution against Universal. This, then, is the classic case for the invocation of Rule 49.
*728 To be sure, its use may not answer all of the coverage questions necessary for the final disposition of questions regarding Universal's liability, but it will do all that ought to be done in the present litigation; and, if necessary, it will furnish a concrete basis for any future litigation between the plaintiff and the defendant's insurer. (For example, a verdict for the plaintiff under the fraud claim may not answer the ultimate "occurrence" issue.)
With all its sophistication, the majority's scheme for bifurcation leaves unanswered myriad problems. For example, the opinion seems oblivious to the fact that, once the trial is over (if we assume the plaintiff wins), the trial can not proceed with the same battery of lawyers; Universal must now wave goodbye to those lawyers who lost the first round, and trot in a new set of lawyers to try the second round. How does this awkward and time-consuming procedure square with the goals of judicial economy and caseload reduction, when compared with the simple invocation of Rule 49, which, in most instances, will dispose of the entire case?
In conclusion, I make three additional observations:
1. In answer to the plaintiff's fears that to allow intervention under these circumstances would permit the intervenor to clutter the lawsuit with a variety of interrogatories and thus confuse the jury, I would answer simply that trial judges know how to draft fair and impartial jury instructions, including interrogatories contemplated by Rule 49.
2. I cannot understand how the plaintiff will be prejudiced rather than aided by the trial court's granting of the petition for limited intervention. If the plaintiff intends to execute judgment only against the defendants (the insureds), the plaintiff can strip the insurer of any interest, and thus defeat the right of intervention, by merely confessing of record its intention not to proceed against the insurance company. If, on the other hand (as is most likely the case), the plaintiff intends to collect any judgment from the insurer, a general verdict that is based on multiple claims or theories, any one of which is not covered by the insurance policy, will avail the plaintiff nothing; and any further proceedings to clarify the coverage issue will not only require a retrial of the issues of liability, but will also risk a contrary result. If any two of the claims submitted to the jury are mutually exclusive, a general verdict for the plaintiff must be set aside as inconsistent, National Security Fire & Cas. Co. v. Vintson, 454 So.2d 942 (Ala.1984); and, even if the claims are cumulative, if any one is determined not to be covered by the policy, there is no way of knowing that the jury based its verdict on a covered claim. Perhaps this is the reason legal commentators refer to Rule 49 as the judge's rule: lawyers refuse to use it even when it would be in their best interest.
3. To the trial judges: Under circumstances where, as here, a general verdict is inappropriate, use your own initiative and avoid a bifurcated trial simply by invoking the procedure authorized by Rule 49.

ON APPLICATION FOR REHEARING
HORNSBY, Chief Justice.
OPINION MODIFIED, APPLICATION FOR REHEARING OVERRULED.
MADDOX, ALMON, SHORES and ADAMS, JJ., concur.
NOTES
[1] This Court notes that under the facts of Alabama Hospital Association Trust, there was no issue presented regarding the enhanced obligation of the insurer to the insured. If, however, counsel representing Lloyd Noland and supplied by AHAT had requested special findings of fact at the time the case was submitted to the jury, a determination under the enhanced obligation criteria enunciated in L & S Roofing Supply Co. v. St. Paul Fire & Marine Ins. Co., 521 So.2d 1298 (Ala.1988), would have been necessary.
[2] A.R.Civ.P. 54(b) provides:

"When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. Except where judgment is entered as to defendants who have been served pursuant to Rule 4(f), in the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
[3] The dissent in Mowry argued that, unlike the policy holder, the insurance company could better protect itself from liability for damages exceeding the policy limits by timely litigating the coverage issue before a settlement offer is made, and therefore the insurer, and not the insured, should bear the loss. As noted by the dissent, the insurer did not litigate the coverage issue in the bifurcated proceeding until a year and a half after the commencement of the action. Id. at 191 (Abrahamson, J., dissenting).