MURDOCK, Justice
(dissenting).
Until today, no published opinion of an appellate court in this State has addressed a case in which a liability insurer had made a dual request for intervention, i.e., a request that the trial court allow intervention under either the procedure outlined in Universal Underwriters Insurance Co. v. East Central Alabama Ford-Mercury, Inc., 574 So.2d 716 (Ala.1991) (“Universal I”), or the procedure contemplated by Universal Underwriters Insurance Co. v. Anglen, 630 So.2d 441 (Ala.1993) (“Universal II”), and the trial court has denied relief under both. The main opinion upholds such a denial in the present case. I respectfully dissent because I believe the trial court erred in not allowing one form of intervention or the other.
The main opinion explains that there are multiple liability insurance coverage issues presented in this case:
“On September 2, 2010, Employers Mutual [Casualty Company] moved to intervene in the action. As grounds for its motion, Employers Mutual stated that it had issued Holman [Building Co., L.L.C.,] one commercial general-liability (‘CGL’) policy for each year from 2001 to 2010 (for a total of 10 CGL policies) and that it had issued Holman one umbrella policy for each year from 2002 to 2010 (for a total of 9 umbrella policies). Employers Mutual further alleged that a number of coverage issues would be presented with regard to which, if any, of the 19 insurance policies would provide coverage for the claims asserted against Holman. Employers Mutual further alleged that each of these coverage issues implicated ‘important questions concerning coverage to potentially be resolved by the jury.’ Specifically, Employers Mutual stated that the following coverage issues would implicate questions of fact for determination by a jury:
“ ‘a. A maximum of one (1) of [Employers Mutual’s] CGL policies may ultimately be implicated in the lawsuit and there is a question regarding which policy is potentially implicated;
“‘b. There is a question regarding whether some or all of the claims alleged against Holman trigger any of the Insuring Agreements of [Employers Mutual’s] policies;
“ ‘c. There is a question regarding whether some or all of the claims asserted against Holman allege an “occurrence,” as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
“ ‘d. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims asserted against Holman allege “bodily injury,” as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
“ ‘e. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims asserted against Holman allege “property damage,” as required by the Insuring Agreements of each of [Employers Mutual’s] policies;
“ ‘f. There is a question regarding whether any alleged “bodily injury” or “property damage” commenced during any of [Employers Mutual’s] policy periods, as required by the Insuring Agreements of [Employers Mutual’s] policies;
“ ‘g. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether Holman’s knowledge of “bodily injury” *864 or “property damage” prior to [Employers Mutual’s] policy periods precludes the application of any of the Insuring Agreements of [Employers Mutual’s] policies;
“ ‘h. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some of the Plaintiffs’ claims are barred by the substantive law of the State of Alabama and are due to be dismissed, which means that [Employers Mutual] owes no duty to defend and/or indemnify Holman as to such claims;
“ ‘i. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether the following exclusions contained in the policies apply to bar some or all of the claims and/or damages asserted against Holman, in whole or in part, as follows: (1) Expected or Intended Injury Exclusion, (2) Pollution Exclusion, (3) Damage to Property Exclusion, (4) Damage to Your Product Exclusion, (5) Damage to Your Work Exclusion, (6) Damage to Impaired Property Exclusion, (7) Recall of Product Exclusion, (8) the Continuous or Progressive Injury or Damage Exclusion, and (9) the Absolute Exclusion for Fraud, Misrepresentation, Deceit, or Suppression or Concealment of Fact'.
“ ‘j. Even if one of [Employers Mutual’s] CGL policies is implicated, there is a question regarding whether some or all of the claims against Holman trigger the insuring agreements of one (1) of the Commercial Umbrella policies issued by [Employers Mutual] to Holman, and whether the following exclusions contained in the Commercial Umbrella policies apply to bar some or all of the claims and/or damages asserted against Holman, in whole or in part, as follows: 1) Property Damage — General Exclusion, 2) Property Damage to Your Product, Work, Impaired Property Exclusion, 3) Product Recall Exclusion, 4) Pollution Exclusion, or 5) Continuous or Progressive Injury or Damage Exclusion.
“ %. Lastly, each of the umbrella policies issued by [Employers Mutual] to Holman contains Endorsement Form CU7187 (11/88), which provides that the coverage provided by the respective umbrella policies will not be broader than the underlying CGL policies issued by [Employers Mutual].’ ”
84 So.3d at 858-59.
The main opinion also notes, however, that there are 21 separate cases pending in Jefferson County and two other Alabama counties, each of which involves claims similar to those presented here; those cases have been filed by different plaintiffs against Holman Building Co., L.L.C., and other defendants. Although the presiding judge of the Jefferson Circuit Court attempted to structure some coordination of those cases, based on a case-management order entered by the presiding judge on September 27, 2010, it appears that the trial of each individual plaintiffs action will proceed as a separate action with its own separate trial. Therefore, unlike my colleagues, I cannot conclude that the pen-dency of these separate actions has a material bearing on the question before us.
In Universal I, this Court recognized the dilemma faced by insurers in situations where the insured was being sued on claims that might or might not be covered by the insurance policy, and we adopted an alternate procedure involving permissive intervention and a bifurcated trial. Alternatively, as indicated in Universal II, an insurer may seek permissive intervention *865 in the underlying tort litigation against the insured for the purpose of requesting a special-verdict form or a general-verdict form accompanied by interrogatories so that it may ascertain the basis of the jury’s verdict in the event the jury finds against its insured.[3]
By depriving Employers Mutual Casualty (“EMC”) of both of the two alternative procedures outlined in Universal I and Universal II, today’s decision leaves EMC with no choice but to attempt to litigate, in a separate, subsequent action, the extent of its liability, if any, to the insured. Such an attempt in a separate action would be inadequate. In QBE Insurance Corp. v. Austin Co., 23 So.3d 1127 (Ala.2009), I found merit in the insurer’s argument as to the inadequacy of such an action:
“I conclude that a subsequent declaratory-judgment action by QBE would not be an adequate substitute for QBE’s intervention in this action and that QBE likely would suffer definite prejudice if it is not allowed to intervene. Again, I believe there is merit in much of QBE’s argument:
“ ‘A declaratory judgment action by QBE would not be an adequate remedy to protect its interest in this case. The coverage issues in this case are entirely fact based. A separate declaratory judgment action cannot determine the factual basis for the damages awarded in this action if there is a general verdict, and therefore, a declaratory' judgment cannot determine the extent of damages awarded for covered consequential damages, versus noncovered damages for replacement or repair of the insured’s work. Further, even if a declaratory judgment was an effective remedy for *866 QBE to resolve coverage issues, such an action would be wasteful of judicial resources, since the coverage questions can be more efficiently resolved in this action.’ ”
28 So.3d at 1135 (Murdock, J., dissenting) (emphasis added).
I find merit in the similar argument made by the insurer in the present case:
“Plaintiffs seek recovery against EMC’s insured, Holman Building Company, LLC. A substantial question exists as to whether some or all of the counts alleged by Plaintiffs against Holman trigger one of the Insuring Agreements) of EMC’s respective CGL policies.
“For example, EMC may have no duty to indemnify Holman for these claims alleging ‘property damage’ through operation of the Damage to Your Work Exclusion in EMC’s respective policies, which are valid under Alabama law_ Thus, some of the damages claimed by Plaintiffs are outside the coverage provided by one (1) of EMC’s policies to Holman; and EMC would have no duty to indemnify Holman for the damages which do not trigger one (1) of EMC’s policies.
“In contrast, Plaintiffs also allege they have suffered ‘mental anguish’, which is considered ‘bodily injur/ under a CGL Policy....
“Therefore, as the Court can see, some of the claims alleged by Plaintiffs may potentially trigger EMC’s duty to indemnify Holman for the some of the losses claimed by Plaintiffs, and some of Plaintiffs’ claims may not trigger EMC’s duty to indemnify Holman.”
EMC’s brief, at 21-23 (footnotes omitted). Referring to Universal I, EMC continues by noting, correctly in my opinion, as follows:
“Universal argued, as EMC does here, ‘that if a general verdict is returned against the insured defendants, Universal will have no way to determine what claims are covered under the policy. Based on these arguments. Universal asserts that it has an interest relating to the subject matter of the action that, under the rules of fairness and equity, gives it a right of intervention,[4] or, in the alternative, that permissive intervention should be allowed.’ Universal I, 574 So.2d, at 718-9. As Universal correctly pointed out, this Court has recognized, ‘the impossibility of going behind a general verdict to determine the theories on which the jury based its verdict ’. Universal I, at 720 (emphasis supplied) ((citing Alabama Hosp. Ass’n Trust v. Mutual Assur. Soc. of Alabama, 538 So.2d 1209, 1215 (Ala.1989) (‘Since no special interrogatories were submitted to the jury, it is not possible for this Court to now determine what was the basis for the jury verdict finding Lloyd Noland liable.’)).”
EMC’s brief, at 24-25 (emphasis added in brief). See generally Root v. City of Mobile, 592 So.2d 1051, 1053 (Ala.1992) (“The purpose of Rule 24 is to anticipate future litigation, to discourage a multiplicity of lawsuits, and to relieve the intervener *867 from the possible prejudice of stare decisis in subsequent litigation involving the same questions of law and fact. Thus, as a general proposition, Rule 24 is to be liberally construed to allow intervention.”).
I also believe this Court should further examine EMC’s argument that the denial of any intervention by an insurer in a case such as this gives rise to due-process concerns. See, e.g., Alabama Hosp. Ass’n Trust v. Mut. Assur. Soc. of Alabama, 538 So.2d 1209 (Ala.1989) (holding that, if a jury enters a general verdict against an insured, the insurer cannot “go behind” the jury verdict to determine the basis for the jury’s award); Baptist Mem’l Hosp. v. Bowen, 591 So.2d 74, 78 (Ala.1991) (“Additionally, because the verdict form was ‘general’ rather than ‘specific’ we cannot determine exactly why the jury found against Baptist alone.”). The problem presented for both sides is not unlike the problem addressed by this Court in Alabama Hospital Association Trust:
“The issue in this case is whether the verdict in the [prior] case against Lloyd Noland [Foundation, Inc.,] was based upon the jury’s finding that Lloyd No-land was liable because of the negligence of the two medical doctors, Habachy and Park. This is impossible to resolve, because the verdict of the jury was a general one and because there was evidence from which the jury could have found liability as to Lloyd Noland based upon the negligence of other employees of Lloyd Noland. Absent a special verdict, the fact of coverage is impossible to prove.”
538 So.2d at 1216 (emphasis added).

. There appears to be much wisdom in the views expressed by Justice Jones in Universal I regarding the practice of allowing an insurer to intervene for the purpose of requesting interrogatories under Rule 49, Ala. R. Civ. P. Some of Justice Jones’s views, as expressed in his special writing, are as follows:
"Having voluntarily offered to submit itself to the jurisdiction of the court, and thus having agreed to be bound by the jury verdict in the trial by the plaintiff against its potential insured, Universal, the insurer, asks simply to be allowed to intervene for the limited purpose of invoking Rule 49, which authorizes the jury’s use of special interrogatories to designate under which, if any, of the claims it found for the plaintiff.
"One would have thought (or at least I did) that the intervention prescribed in Lowe v. Nationwide Ins. Co., 521 So.2d 1309 (Ala.1988), would be interpreted as direct authority (if, indeed, common sense was not of itself sufficient authority) for the proposition that Universal’s interest in the outcome of the instant litigation, albeit both limited and contingent, would permit intervention concomitant with its limited interest. Indeed, Nationwide’s interest in the Lowe case was equally limited and contingent.
"The insurer’s interest in both this case and in Lowe, in a broad sense, deals with the issue of coverage. In Lowe, the insured had no underinsured coverage (and, thus, the insurer had no liability) unless the jury’s verdict for the plaintiff exceeded the amount of the primary coverage. Here, the insurer has no liability to the plaintiff, unless the jury awards the plaintiff damages under a theory of liability for which the policy provides coverage. A general verdict for this plaintiff may be sufficient for execution against these defendants, but, because certain of the plaintiff's theories are clearly outside the coverage provided by the policy, it would obviously not be sufficient for execution against Universal. This, then, is the classic case for the invocation of Rule 49.”
574 So.2d at 727. Justice Jones also responded to concerns that special interrogatories might confuse the jury by noting that "trial judges know how to draft fair and impartial jury instructions, including interrogatories contemplated by Rule 49,” and that he could not understand how the plaintiff would be prejudiced, rather than aided, by the trial court’s granting of the petition for limited intervention for the purpose of proposing such interrogatories. 574 So.2d at 728.

. Rule 24(a)(2), Ala. R. Civ. P., provides for "intervention of right”:
"when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant’s ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.”
We have not been asked in this case to revisit the holding in Universal I that a liability insurer is not entitled to intervene as a matter of right in a case such as this.